1

2

3

4

5

6

7
                    UNITED STATES DISTRICT COURT
8
                        DISTRICT OF OREGON
9
                        PORTLAND DIVISION
10

11 **JAMES D. HEMENWAY** and **DANA A.**        )
   **HEMENWAY,**                                )
12                                              )        3:11-cv-00283-HU
                    Plaintiffs,                 )
13                                              )
        vs.                                     )        **FINDINGS AND**
14                                              )        **RECOMMENDATION**
   **WELLS FARGO, N.A.**, a federal bank;       )
15 **FEDERAL HOME LOAN MORTGAGE**               )
   **CORPORATION,** a federal chartered         )
16 corporation,                                 )
                                                )
17                  Defendants.                 )
18                              _____

Benjamin D. Knaupp
19 bknaupp@gmail.com
   Benjamin D. Knaupp, PC
20 254 N. First Ave.
   Hillsboro, OR 97214
21
        Attorney for Plaintiffs
22
   Robert E. Sabido
23 rsabido@cvk-law.com
   Paul A. C. Berg
24 pberg@cvk-law.com
   Michael J. Mangan
25 mmangan@cvk-law.com
   Cosgrave Vergeer Kester LLP
26 805 SW Broadway, 8th Floor
   Portland, OR 97205
27
        Attorneys for Defendants
28

   FINDINGS AND RECOMMENDATION       1

1  HUBEL, Magistrate Judge:

2  **Findings and Recommendation**

3      Currently before the court is defendants Wells Fargo, N.A.
4  ("Wells Fargo), and Federal Home Loan Mortgage Corporation
5  ("FHLMC") (collectively, "Defendants") motion for summary judgment
6  pursuant to Federal Rule of Civil Procedure ("Rule") 56(c).
7  Plaintiffs James D. Hemenway and Dana A. Hemenway (collectively,
8  "Plaintiffs") have brought claims for quiet title and breach of the
9  duty of good faith and fair dealing against Defendants in this
10 matter.    Defendants move for summary judgment on each of
11 Plaintiffs' claims.    Based on the reasons set forth below,
12 Defendants' motion [19] for summary judgment should be GRANTED.

13 **Background[1]**

14     On October 13, 2006, Plaintiffs borrowed $250,000 from West
15 Coast Bank, an Oregon state chartered bank, in order to purchase
16 real property located in Hillsboro, Oregon. (Compl. ¶ 2.)  On that
17 same date, Plaintiffs signed a Deed of Trust in favor of Mortgage
18 Electronic Registration Systems, Inc. ("MERS"), as the beneficiary
19 under the Deed of Trust.   (Compl. ¶ 2.)   The Deed of Trust was
20 recorded on October 18, 2006, as fee #2006-123579 in the Washington
21 county records.   (Compl. ¶ 2.)

22     No recorded document appears in the Washington county records
23 showing an assignment of the lender's beneficial right from West
24 Coast Bank to any other party. (Compl. ¶ 3.)  On April 6, 2010, an
25 individual identified as Becky Baker, Vice President of MERS,

26 _____

27     [1] Unless otherwise noted, the following facts are taken from
   Plaintiffs' complaint and Plaintiffs' Response to Defendants'
28 Motion for Summary Judgment.

signed an assignment of the beneficial rights of the Deed of Trust in favor of Wells Fargo, which was recorded on April 7, 2010. (Compl. ¶ 3.)  The document was notarized by Brian C. Pham, a King County, Washington notary, who states that the document was acknowledged before him on April 6, 2010. (Compl. ¶ 3.)  "On April 5, 2010 (one day prior to the date that the beneficial rights were assigned to Wells Fargo by MERS) Wells Fargo's appointed attorney in fact, Kathy Taggart, signed a document appointing a successor trustee, Northwest Trustee Services, Inc. as successor trustee." (Compl. ¶ 4.)  Brian C. Pham also notarized this document, which was acknowledged before him on April 5, 2010.  (Compl. ¶ 4.)

In December of 2009, Plaintiffs had contacted Wells Fargo about loan modification options because they had fallen behind on payments.  (Compl. ¶ 5.)  Plaintiffs submitted all forms of documentation that Wells Fargo requested and were apparently told by a Wells Fargo representative not to make any payments until the modification application was decided.  Compl. ¶ 5.)

On April 12, 2010, Plaintiffs were served with a notice of default and election to sell their property by public auction on August 16, 2010. (Compl. ¶ 6.)  Plaintiffs stayed in contact with Wells Fargo and, shortly before the scheduled sale date, were told that the sale would be postponed and no decision had been made on their loan modification application.  (Compl. ¶ 6.)  The foreclosure sale was then postponed one additional time while Plaintiffs awaited a decision on their application. (Compl. ¶ 7.)

On November 1, 2010, Plaintiffs called Wells Fargo and were informed that the foreclosure sale would be held the following day.

FINDINGS AND RECOMMENDATION    3

(Compl. ¶ 7.)  Plaintiffs were told that it was too late to stop the sale.  (Compl. ¶ 7.)  Plaintiffs did not receive notice that their loan modification application was rejected until several days after the foreclosure sale.[2]  (Compl. ¶ 7.)  Plaintiffs attended the foreclosure sale and observed no third parties in attendance at the sale, and observed that the trustee sold the property for $276,245.05 to a party that Plaintiffs could not identify with certainty.  (Compl. ¶ 8.)  On November 10, 2010, a Trustee's Deed was recorded in Washington County, recorder's fee #2010-090489. (Compl. ¶ 8.)  The document, signed by the trustee, Northwest Trustee Services, Inc., transfers Plaintiffs' title to FHLMC for the sum of $276,245.05, and recites that FHLMC was the "highest and best bidder at the sale and that the sale was "in cash."  (Compl. ¶ 8.)

On or about January 10, 2011, Plaintiffs were served with a Forcible Entry and Detainer ("FED") summons to appear in Washington County Circuit Court, case number C110020EV ("the FED action").[3] (Compl. ¶ 9.)  In response, Plaintiffs filed this action against Defendants in Washington County Circuit Court on January 21, 2011.

---

[2] James Hemenway's affidavit indicates the Plaintiffs did receive notice prior to November 1, 2010, just not written notice. "I was told on about October 15th that my modification application was denied because my documents had 'expired.' I asked to re-submit current documents and could not get an answer from Wells Fargo. Never at any time prior to the sale on November 2nd did I received [sic] written notice that my modification application was denied." (Aff. James Hemenway (doc. #31-2) at 1.)

[3] Or, as Defendants state, "[o]n January 4, 2011, as the owner of the property, FHLMC commenced a Forcible Entry and Detainer action against plaintiffs in Washington County Circuit Court[.]" (Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem.") at 3.)

FINDINGS AND RECOMMENDATION    4

1  (Notice of Removal (doc. #1) Ex. 1 at 9.) Defendants removed this

2  action on March 7, 2011. (Notice of Removal at 2.)

3                                 **Legal Standard**

4     Summary judgment is appropriate "if pleadings, the discovery

5  and disclosure materials on file, and any affidavits show that

6  there is no genuine issue as to any material fact and that the

7  movant is entitled to judgment as a matter of law." FED. R. CIV.

8  P. 56(c). Summary judgment is not proper if factual issues exist

9  for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

10  1995).

11     The moving party has the burden of establishing the absence of

12  a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

13  U.S. 317, 323 (1986). If the moving party shows the absence of a

14  genuine issue of material fact, the nonmoving party must go beyond

15  the pleadings and identify facts which show a genuine issue for

16  trial. *Id.* at 324. A nonmoving party cannot defeat summary

17  judgment by relying on the allegations in the complaint, or with

18  unsupported conjecture or conclusory statements. *Hernandez v.*

19  *Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus,

20  summary judgment should be entered against "a party who fails to

21  make a showing sufficient to establish the existence of an element

22  essential to that party's case, and on which that party will bear

23  the burden of proof at trial." *Celotex*, 477 U.S. at 322.

24     The court must view the evidence in the light most favorable

25  to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d

26  1278, 1284 (9th Cir. 1982). All reasonable doubt as to the

27  existence of a genuine issue of fact should be resolved against the

28  moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).

FINDINGS AND RECOMMENDATION     5

1 Where different ultimate inferences may be drawn, summary judgment
2 is inappropriate. *Sankovick v. Life Ins. Co. of N. Am.*, 638 F.2d
3 136, 140 (9th Cir. 1981).

4 However, deference to the nonmoving party has limits. The
5 nonmoving party must set forth "specific facts showing a genuine
6 issue for trial." FED. R. CIV. P. 56(e). The "mere existence of
7 a scintilla of evidence in support of plaintiff's positions [is]
8 insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252
9 (1986). Therefore, where "the record taken as a whole could not
10 lead a rational trier of fact to find for the nonmoving party,
11 there is no genuine issue for trial." *Matsushita Elec. Indus. Co.,*
12 *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal
13 quotation marks omitted).

14 **Discussion**

15 **I.   Plaintiffs' Quiet Title Claim**

16 According to Defendants, in the FED action, Plaintiffs filed
17 a trial memorandum that asserted three arguments: (1) the
18 Assignment of Deed of Trust from MERS to Wells Fargo was unlawful
19 because MERS was not the beneficiary; (2) the Appointment of
20 Successor Trustee by Wells Fargo, *e.g.*, appointing Northwest
21 Trustee Services, Inc. ("NWTS"), was void because it occurred one
22 day before Wells Fargo received any beneficial rights to make the
23 assignment; and (3) the Notice of Trustee's Sale violated ORS
24 86.745(1) because it failed to list FHLMC as the beneficiary.
25 (Defs.' Mem. at 3.) FHLMC filed a memorandum responding to those
26 arguments and, on April 8, 2011, a trial was held in the FED
27 action. (Defs.' Mem. at 3.) After hearing testimony and argument
28 from both parties, the trial court found in favor of FHLMC. (Defs.'

1   Mem. at 3.)    A general judgment was entered in favor of FHLMC on

2   that same day, and the time for appealing the judgment has passed.

3   (Defs.' Mem. at 3.)

4         Defendants thus argue that Plaintiffs are precluded from

5   relitigating their quiet title claim because "[t]he issues raised

6   in plaintiffs' quiet title claim are identical to the issues they

7   already litigated in the FED action[.]" (Defs.' Mem. at 6.)

8   "Plaintiffs have agreed not to contest defendants' motion on this

9   claim." (Pl.'s Mem. Supp. Resp. Defs.' Mot. ("Pl.'s Mem.") at 3.)

10        Accordingly, Defendants are entitled to summary judgment on

11  Plaintiffs' claim for quiet title.[4]

12  **II.   Plaintiffs' Claim for Breach of the Duty of Good Faith and
        Fair Dealing**

13

14        Plaintiffs second claim for breach of the duty of good faith

    and fair dealing can be summarized as follows:

15

16        Based on the written loan agreements (which including
          [sic] the trust deed described above and the accompanying
17        note) between plaintiff and West Coast Bank, defendant
          Wells Fargo, as the servicer of the loan owes a duty to
18        plaintiff under common law and ORS 86A.151 and 154, to
          communicate with plaintiff about loan modification and
19        reinstatement rights in good faith and with fair dealing.
          Wells Fargo failed to have personnel available,
20        adequately trained, and/or supervised, resulting in a
          failure by defendant to notify plaintiffs that their loan
21        modification was denied.   This left plaintiff with
          inadequate warning to prepare for the foreclosure sale
22        November 2, 2010, resulting in the loss of plaintiff's
          property at the foreclosure sale[.]

23  (Compl. ¶ 13.)

24  ///

25  _____

26        [4] Despite suggestions to the contrary during oral argument and
    an opportunity to provide supplemental briefing to the court,
27  Plaintiffs again concede Defendant's motion for summary as to the
    quiet title claim and "expect[s] that this motion will be granted."
28  (Pl.'s Supp. Mem. at 1.)

## A.    Loan Modification Under HAMP

In support of their motion for summary judgment, Defendants rely primarily on *Vida v. OneWest Bank, F.S.B.*, No. 10-987-AC, 2010 WL 5148473 (D. Or. Dec. 13, 2010).   In *Vida*, the plaintiff-homeowner brought a claim for breach of contract against OneWest Bank, FSB ("OneWest") and Federal National Mortgage Association ("FNMA") (collectively, "Defendants").   *Id.* at *1. Defendants argued that the plaintiff failed to state a claim because she could not state such a claim under the Home Affordable Modification Program ("HAMP").   *Id.* Plaintiff contended that her breach of contract claim was independent of HAMP and was based on principles of the common law of contract.   *Id.* at *4.   The plaintiff's essential argument was as follows:

> [A]lthough her breach of contract claim is premised on representations made in the course of the HAMP approval process and, to some extent, on representations made in HAMP documents themselves, it is not premised on an entitlement arising under HAMP and, thus, does not depend on a private right of action also arising under HAMP. Rather, *the claim depends on representations made by OneWest which themselves amounted to an enforceable promise to modify her contract and refrain from initiating foreclosure.*

*Id.* at *5 (emphasis added).  *Vida* agreed with the district courts in the Ninth Circuit which found "that HAMP does not authorize a private right of action against participating lenders." *Id.* Judge Acosta found Plaintiff's logic flawed because

> the alleged offer to modify HAMP came about and was made wholly under the rubric of HAMP, as were [Plaintiff]'s alleged actions in acceptance of the offer, i.e., submitting the required documentation, and the alleged consideration, i.e., remitting reduced loan payments. [Plaintiff] fails to state a cause of action independent of HAMP, for which there is no private right of action.

FINDINGS AND RECOMMENDATION       8

*Id.* at \*5-6.  Plaintiff's breach of contract claim was therefore dismissed.  *Id.* at \*7.

A similar lawsuit was brought against Wells Fargo by a plaintiff-homeowner in *Stolba v. Wells Fargo & Co.*, No. 10-cv-6014, 2011 WL 3444078 (D. N.J. Aug. 8, 2011).  There, the plaintiff applied for a loan modification due to financial difficulties. *Id.* at \*1. Wells Fargo informed him that he might qualify for a Trial Period Plan ("TPP") under HAMP.  *Id.*  The plaintiff made TPP payments for several months, until Wells Fargo instructed him to cease payment because they intended to foreclose.  *Id.*  A convoluted back-and-forth ensued between the plaintiff, Wells Fargo, and the plaintiff's wife, regarding mortgage modification and submitting supporting documentation.  *Id.* Wells Fargo ended up being sued for breach of contract and breach of the implied covenant of good faith and fair dealing.  *Id.*  The suit was brought on a "the theory that the TPP constituted a contract under state law between Wells Fargo and Plaintiffs. Plaintiffs' claims therefore arguably arose under Wells Fargo's alleged failure to comply with its contractual obligations under the TPP or state contract law, not under HAMP or any federal statute."  *Id.* at \*3.

At the outset, *Stolba* found that "HAMP does not create a private right of action for borrowers."  *Id.*  Relying on *Vida*, it was then determined that, "[s]everal courts have flatly rejected Plaintiffs' state contract law theory of liability."  *Id.*  The court therefore concluded that Plaintiffs' allegations failed to state a claim for breach of contract.  *Id.*  Notably, in addressing Plaintiffs' claim for the breach of the implied covenant of good faith and fair dealing, *Stolba* made an observation pertinent to

this case by stating, "[g]iven that the Court has determined that there was no enforceable contract between Wells Fargo and Plaintiffs (in connection with the TPP or HAMP), a breach of the implied covenant would not appear possible." *Id*. at 4. As a result, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing was dismissed. *Id*. at *5.

Wells Fargo's records show that, on August 5, 2010, it sent an application packet for loan modification under HAMP to James Hemenway. (Decl. Jessica Jones ¶ 5.)   Reviewing Plaintiffs' application lead to postponement of the originally scheduled foreclosure sale on August 16, 2010. According to Plaintiffs, they "do not need to dispute whether HAMP authorizes a private right of action or not, because plaintiffs' cause of action is established in common law[.]" (Pl.'s Mem. at 5.)   I disagree with Plaintiffs that their cause of action is independent of HAMP.

Plaintiffs argue that, "[t]here is [] a question whether the verbal assurance of defendants' representatives that a foreclosure sale would not occur while the loan modification was in process amounted to an enforceable forbearance agreement." (Pl.'s Mem. at 5.)   This allegation mirrors the allegations in *Vida*, *i.e.*, the claim depends on representations made by the bank which themselves amount to an enforceable promise to modify the contract and/or refrain from initiating foreclosure.   Setting aside the fact that the complaint is devoid of allegations regarding a forbearance agreement, any alleged offer by Wells Fargo to forebear and/or modify came about and was made wholly under the rubric of HAMP. The "agreement" to forebear was inextricably interwoven with the modification application being considered which implicates HAMP.

FINDINGS AND RECOMMENDATION      10

1    Taken together, *Vida* and *Stolba* demonstrate that a claim for breach
2    of the implied duty of good faith and fair dealing cannot lie under
3    these circumstances.

4         Accordingly, I recommend Defendants' motion for summary
5    judgment be granted on this ground.

6         **B.    Factual Deficiencies**

7         In any event, the record does not support Plaintiffs' claims
8    regarding the existence of a forbearance agreement, nor does it
9    suggest that foreclosure proceedings commenced while the loan
10   modification application was pending.

11        The parties do not dispute the fact that, on April 12, 2010,
12   Plaintiffs were served with a notice of default and election to
13   sell their property on August 16, 2010.  Plaintiffs were sent a
14   Notice of Foreclosure in April 2010 that clearly stated, **"YOUR
15   LENDER IS NOT REQUIRED TO MODIFY YOUR LOAN.  The foreclosure sale
16   may proceed if your loan is not modified.'"** (Defs.' Mem. at 10;
17   Sabido Decl. Ex. F at 6) (emphasis added.)  "Wells Fargo's record
18   show that, on October 1, 2010, it sent a letter to plaintiff James
19   Hemenway informing him that loan modification under HAMP was
20   denied."  (Decl. Jessica Jones ¶ 6, Ex. C.)   James Hemenway
21   acknowledges that he was notified of the denial "on about" October
22   15, 2010, which contradicts the allegation in the complaint that,
23   "Plaintiffs finally received a notice that their loan modification
24   application was rejected several days after the foreclosure sale
25   [on November 2, 2010]."  (Aff. James Hemenway (doc. #31-2) at 1;
26   Compl ¶ 7.)  While there is arguably a question of fact whether
27   Plaintiffs received written notice denying the loan modification,
28   neither party has suggested that written notice was required.  In

FINDINGS AND RECOMMENDATION     11

1  fact, the HAMP application packet indicates in multiple places
2  that, if Plaintiffs' application was denied, Wells Fargo would
3  "contact" Plaintiffs. (Decl. Jessica Jones [27-1] at 5, 9.) There
4  is no genuine issue as to whether Plaintiffs were contacted.
5  Accordingly, I agree with Defendants that Plaintiffs had "prior
6  notice of the impending foreclosure sale, and of the effect that a
7  loan modification denial would have on the impending sale[.]"
8  (Defs.' Mem. at 10.)  Simply put, if Plaintiffs' loan modification
9  application was denied, Plaintiffs were aware that "the foreclosure
10 sale may proceed."

11     The complaint also states that Plaintiffs called Wells Fargo
12 on November 1, 2010, and were told it was "too late to stop the
13 sale" on November 2, 2010.  (Compl. ¶ 7.) In his affidavit,
14 however, James Hemenway states: "**When I called November 1ˢᵗ, I was**
15 **told the foreclosure sale was going to take place the next day. I**
16 **was told I could request a postponement or a recission [sic] of the**
17 **sale.**" (Aff. James Hemenway at 1) (emphasis added).  The crux of
18 Plaintiff's good faith and fair dealing claim, as plead, is that
19 "Wells Fargo failed . . . to notify plaintiffs that their loan
20 modification was denied" which lead to "inadequate warning to
21 prepare for the foreclosure sale November 2, 2010." (Compl ¶ 13.)
22 Yet, Plaintiffs acknowledge receiving notice of the denial at least
23 two weeks prior to the foreclosure sale and James Hemenway's own
24 admission demonstrates that, if Plaintiffs needed further time to
25 prepare, Wells Fargo was willing to provide appropriate
26 accommodations.  The record does not show any such further request
27 from Plaintiffs.

28

FINDINGS AND RECOMMENDATION     12

In short, Plaintiffs' contradictory allegations demonstrate the factual deficiencies in their good faith and fair dealing claim.

**C.  Legal Deficiencies**

Even apart from HAMP, Plaintiffs' claim fails as a matter of law.  Plaintiffs contend that "Defendants' duty of good faith and fair dealing is implied in the loan agreement[.]" (Pl.'s Mem. at 4.)   In Oregon, it is well settled law that, "every contract contains an implied duty of good faith" and "[t]hat duty is to be applied in a manner that will effectuate the reasonable contractual expectations of the parties." *Uptown Heights Assocs. v. Seafirst Corp.*, 320 Or. 638, 645 (1995) (internal quotation marks and citation omitted).   However, only the objectively reasonable expectations of the parties warrant examination in determining whether the obligation of good faith has been met. *Id.*  Notably,

> if a written contract between the parties expressly allows for a particular remedy by one of the parties, in the face of a specified breach, the parties' objectively 'reasonable expectations' under the contract include the invocation of that remedy in the face of that breach. The party invoking its express, written contractual right does not, merely by so doing, violate its duty of good faith.

*Id.*

Here, the loan agreements gave Wells Fargo the right to foreclose should Plaintiffs default on their loan.  Plaintiffs acknowledge that they fell behind on their payments in December 2009.  There is nothing before the court that suggests Wells Fargo was under any obligation to modify Plaintiffs' loan.  To the contrary, Wells Fargo informed Plaintiffs that they were not obligated to grant such a request.  Because Wells Fargo merely

FINDINGS AND RECOMMENDATION    13

1  invoked its express, contractual right to foreclosure, the duty of
2  good faith was not violated.

3        Plaintiffs cite *Best v. U.S. Nat'l Bank of Or.*, 303 Or. 557
4  (1987), for the proposition that, bad faith may include a wide
5  range of acts, such as, "evasion of the spirit of the bargain, lack
6  of diligence and slacking off, willful rendering of imperfect
7  performance, abuse of power to specify terms, and interference with
8  or failure to cooperate in the other party's performance." *Id.* at
9  563 (quoting Restatement (Second) of Contracts § 205, *comment d*
10 (1979)). There is no evidence of bad faith on this record. Wells
11 Fargo was able to foreclose once Plaintiffs defaulted. If
12 Plaintiffs are attempting to argue Wells Fargo slacked off or
13 rendered imperfect performance in evaluating their loan
14 modification application, I point out that Wells Fargo was not
15 contractually obligated to modify Plaintiffs' loan, or to grant
16 such a request.

17       Plaintiffs next claim that the instant matter is analogous to
18 *Henin v. Bank of Am. Home Loan Servicing*, No. 10-1500-HA, 2011 WL
19 1667472 (D. Or. May 3, 2011). There, in addressing a claim for
20 breach of the duty of good faith and fair dealing, the court found
21 that, although the Deed of Trust authorized foreclosure of the
22 property upon default, "plaintiffs have pled facts alleging that an
23 oral forbearance agreement modified [defendant]'s right of sale and
24 required [defendant] to postpone the foreclosure sale until
25 plaintiff's short sale process was completed." *Id.* at *4.
26 "Alternatively, plaintiffs have alleged that [defendant] induced
27 them to enter the forbearance agreement and forgo their statutory
28 right to cure when [defendant] had no intention of actually

FINDINGS AND RECOMMENDATION    14

1  postponing the sale." *Id.* As a result, Judge Haggerty determined
2  that the plaintiffs stated a plausible claim for bad faith under
3  the *Twombly-Iqbal* standard. *Id.*

4      I find Plaintiffs reliance on *Henin* unavailing. First, and
5  perhaps most notably, *Henin* was not a HAMP case which would have
6  required that court to evaluate whether the forbearance agreement
7  was made under the rubric of HAMP. In addition, unlike *Henin*,
8  nowhere in the complaint has Plaintiff alleged that Wells Fargo
9  "induced" them to enter into any agreement to their detriment, to
10  forgo any statutory right, or that Wells Fargo had no intention of
11  actually postponing the sale. Indeed, Wells Fargo postponed the
12  sale on two occasions while evaluating Plaintiffs' request to
13  modify their loan, and even offered, according to Plaintiffs, to
14  postpone it after the application had been denied if Plaintiffs so
15  requested. Plaintiffs' second claim for relief does not allege any
16  new contractual agreement not to foreclose upon which the duty of
17  good faith and fair dealing could attach itself.

18      Finally, during oral argument Plaintiffs raised issues
19  regarding the claim-preclusive effect of the FED action and were
20  permitted, at their request, to submit supplemental briefing on
21  that topic. Wells Fargo, however, is not arguing that Plaintiffs
22  "could have brought their claim for breach of the implied duty of
23  good faith and fair dealing, *itself*, in the FED action." (Defs.'
24  Supp. Reply at 2.) Rather, Wells Fargo is arguing that: (1)
25  Plaintiffs fail to identify a legal basis to support a claim for
26  breach of the duty of good faith and fair dealing; (2) "[t]o the
27  extent plaintiffs are relying on the Note and the Deed of Trust as
28  the predicate contracts to support their claim, neither of those

FINDINGS AND RECOMMENDATION    15

documents contain a provision relating to loan modification (the subject of the alleged breach). And the court cannot rewrite the contracts to include such a provision"; and (3) "[t]o the extent plaintiffs are relying on the alleged deficiencies in the nonjudicial foreclosure proceedings to support their claim-- an issue plaintiffs raised for the first time during oral argument-- *those* alleged deficiencies have been raised in the FED action and, hence, cannot be relitigated in this case." (Defs.' Supp. Reply at 2.)

Because I agree with Wells Fargo on prongs one and two, I need not address any arguments relating to claim preclusion.  Simply put, Plaintiffs' good faith and fair dealing claim, as plead, fails on its merits without considering the claim-preclusive effect of the FED action.

## Conclusion

For the reasons stated above, Defendants' motion [19] for summary judgment should be GRANTED.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due January 27, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due February 13, 2012.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 9th day of January, 2012.

/s/ Dennis J. Hubel

_____

FINDINGS AND RECOMMENDATION     16

1
                                        Dennis James Hubel
2
                              Unites States Magistrate Judge

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINDINGS AND RECOMMENDATION     17